The Ohancellob.
The bill in this cause is filed by judgment and execution creditors, of Isaac L. Hunt, who have levies upon personal and real estate charged to belong to the defendant in execution. The design of the bill is to have certain liens, claimed to exist upon the property levied upon, set aside, and the complainants’ executions satisfied out of the property. These liens consist of three mortgages, executed by Isaac L. Hunt to Samuel I. Hunt, and of two instruments or deeds of transfer from Isaac L. Hunt to George L. Chapman, one bearing date on the tenth of March, 1860, and the other bearing date on the twenty-fifth of October, 1860. These deeds, or instruments of transfer from Hunt to Chapman, are alleged in the bill of complaint to be invalid, null, and void; and if valid, it is insisted that the same must be foreclosed by suit before Chapman can proceed to make sale of the property therein described, it being alleged in the bill that Hunt, the grantor, remains in possession of said property.
*369 By the state of the case and agreement signed by counsel, it is stipulated that the object of the demurrer filed to the bill shall be to test the validity and effect of the said instruments or deeds of transfer, and to obtain the construction thereof.
In considering the validity and effect of these instruments, it is important to ascertain with precision the motive for their execution, the purpose designed to be accomplished by them, and the mode in which that purpose is sought to be effected, so far as this information can be derived from the instruments themselves.
The deed or agreement of the tenth of March, 1860, recites, that Hunt, being engaged in the hardware business in the city of New York, on the fourteenth of November, 1859, made an assignment of all his property in the state of New York for the benefit of creditors (a copy of which is annexed to the agreement).
2. That he has made a compromise with nearly all his creditors provided for in the assignment, except those named, in schedules A and B, annexed thereto, and has agreed to give said creditors his own notes, at twelve, eighteen, and twenty-four months, from May fifteenth, 1860, at thirty cents on the dollar, on their releasing him from said debts and his assigned property from all claim thereon.
3. That it was deemed, for the interest of Hunt and his estate, that said assignment should be raised, and the business carried on by him re-established, at as early a day as possible.
4. That it has been agreed between the parties that Chapman shall assist Hunt in raising said assignment, and to that end, that he shall purchase or settle all the claims mentioned in schedules A and B, so that he will represent the same; and that thereupon the assignee shall assign to Chapman all the property covered by the assignment, and transfer the securities upon the property in New Jersey to indemnify him in the premises, and lor other purposes in the agreement *370 provided. It appears that Hunt, being insolvent, had made a general assignment for the benefit of his creditors.
The motive for the arrangement was the interest of Hunt, the assignor. The purpose to be accomplished was that the assignment should, in the language of the agreement, be raised, and Hunt be enabled to re-establish himself in business. Tbe mode in which this object was to be accomplished was not by a sale of the trust property, and applying the proceeds to the payment of the debts, but by Chapman’s purchasing or settling the claims of all the preferred creditors under the assignment mentioned in schedules A and B, so that he shall represent the same, and by the assignee transferring to Ohapman all the property covered by the deed of assignment, and conveying to him all the securities upon the property in New Jersey held by him as collateral, to indemnify Ohapman in the premises and for other purposes in the agreement provided.
The parties stipulate that Ohapman shall purchase up or settle all the outstanding preferred claims against Hunt under the assignment, and hold them against the assigned property at the sum only for which he shall purchase them, with interest; that Hunt shall thereupon require his assignee to transfer to Ohapman all the assets remaining in his hands under the assignment, and also all the mortgages he holds upon the real and personal property of the assignor in New Jersey, as collateral security for what was coming to him under the assignment embraced in schedule A. Hunt thereupon conveyed to Ohapman all his residuary interest under the assignment, all his real and personal property, of every name and nature, not covered by the assignment in New Jersey or elsewhere, as his security and indemnity for all moneys paid, or agreed to be paid, and liabilities incurred under the agreement, and for all moneys due him from the assignor, and for other purposes therein after mentioned.
It is further agreed that, after the assignee shall have made a transfer of the assigned property and effects to Ohapman as abovesaid, Ohapman shall collect the debts, sell the *371 property and effects, convert it into money, reimburse himself for all advances, pay all notes given in satisfaction of the preferred debts, pay all the preferred claims, including $31,865.88, acknowledged to be due to Chapman, and out of the balance pay book accounts standing against the factory of the assignor at Newark, not exceeding $3000, notes given by Hunt, or liabilities incurred by him in compromising his own debts not preferred, and also such of his debts as he may be unable to compromise, and the surplus to be divided equally between the parties. If Chapman’s share of the surplus should exceed one hundred dollars, the farm at Rahway is to remain the exclusive property of Hunt, but if his share fall short of one hundred dollars, the farm, subject to a mortgage of $7200, like the remaining surplus, is to remain the joint property of both parties.
The agreement contains some further provisions, which do not materially affect or vary its leading features.
To appreciate fully the effect and operation of this agreement, it is necessary to bear in mind that the debt due to Samuel I. Hunt, the assignee, for which he held mortgages on the property of the assignor in New Jersey, was included in schedule A, and was therefore fully protected by the assignment in New York.
It is conceded that if the terms of this instrument had been inserted in an assignment for the benefit of creditors they would have rendered the assignment illegal and void.
1. Because its operation is to give preference to one class of creditors over another, in direct violation of the terms of the statute. Nix. Dig. 27, § 1; Varnum v. Camp, 1 Green 326; Garretson v. Brown, 2 Dutcher 425.
2. Because it reserves to the assignee a control of the property, and provides for the assignor a benefit other than such as will arise from the payment of his debts. Owen v. Arvis, 2 Dutcher 22; Goodrich v. Downs, 6 Hill 438; Boardman v. Halliday, 10 Paige 223.
3. Because it contains provisions not in conformity with the statute, and hinders and delays creditors by placing the *372 property beyond tbe reach of legal process. Knight v. Packer, 1 Beasley 214 ; Emerick v. Harlan, Ibid. 229; Collomb v. Caldwell, 16 New York R. 484.
Tbe instrument in question was made when tbe party was insolvent. I'fr is a transfer of all bis residuary interest under tbe assignment made in New York, and of all bis estate, real and personal, in New Jersey or elsewhere, with a specified exception, which does not essentially affect its character. It creates a trust for creditors. It contains all tbe elements of an assignment. Tillou v. Britton, 4 Halst. 138; Owen v. Arvis, 2 Dutcher 34; Knight v. Packer, 1 Beasley 214.
Tbe professed design of tbe instrument is to raise tbe as•signment made in New York, and relieve tbe defendant’s property from its control. But its aim and operation is place that assignment under tbe control of tbe assignor, to keep it on foot after bis creditors are satisfied as a cover to bis property, and to make tbe whole of the assignor’s property in New Jersey subservient to tbe purposes of that assignment. The New York assignment, though valid by tbe laws of that state, would baye been inoperative to transfer tbe property of the assignor in New Jersey, though expressly included within its terms. Varnum v. Camp, 1 Green 326.
That cannot be accomplished by indirect means which it would not be lawful to effect directly.
The instrument is virtually an assignment or transfer of tbe grantor’s property ostensibly for tbe payment of bis debts, giving illegal preference to classes of creditors.
2. It keeps on foot tbe encumbrances on tbe property in New Jersey after tbe claims for which they were given as collateral security had been fully extinguished and satisfied by tbe assignment in New York.
3. It provides for the payment of debts due from tbe assignor, on account of tbe factory at Newark, in preference to other creditors.
4. It provides for tbe repayment to the assignor himself of moneys paid by him-upon a compromise with bis creditors, who were, not included in -the class of preferred creditors; thus satisfying bis creditors by tbe payment of a small per *373 centage of his debts, and then securing the amount so paid out of his property in preference to his other creditors.
5. It reserves the surplus of the property, after compromising with the creditors, for the joint benefit of the assignor and assignee.
6. It operates directly, as it obviously was designed to do, to hinder, delay, and defraud the creditors of the assignor.
The question as to the validity of the second deed of transfer, bearing date on the twenty-fifth of October, 1860, was recently raised before me upon a demurrer to a bill of foreclosure filed by Chapman v. Hunt, Ante, 149. Various objections were then urged to the validity of the instrument; among others, that it was void by the policy of the law regulating assignments for the benefit of creditors. In the bill, it was described as a mortgage given to secure a specified debt, and also as a security for advances thereafter to be made. The objection was raised by the mortgagor himself. It was then held that the instrument was not void as against the policy of the assignment act, not purporting upon its face to be an assignment for the benefit of creditors, but a security for the payment of specified debts. Ho opinion was expressed as to its validity in other respects, nor as to its effect upon the rights of other creditors of the mortgagor. The question is now presented by a creditor of the mortgagor, and in a different aspect. In the aspect in which the question is now presented, viewing the instrument in connection with the preceding agreement of the tenth of March, 1860, I entertain very strong doubts as to its validity. If it shall appear that the transfer in question was made while Hunt was insolvent ; that it was an assignment of all his property not included in or covered by the former transfer, and that it was in fact made to subserve the same purpose with that instrument, it will be very difficult to maintain its validity in view of the provisions of the assignment act. But that is a question proper to be considered and disposed of upon the final hearing rather than upon demurrer; the more especially as, by the state of the case and agreement of counsel, *374 it was stipulated that the deeds shall upon the demurrer be taken to be made for the objects and with the intent, and upon the consideration mentioned in them, and that the same are not to be impeached or supported by matters or allegations ab extra, with a view to settling at this stage of the cause the true character and effect of said deeds. In this view of the instrument, I am still of opinion that it cannot be held void as against the policy or provisions of the assignment act. It does not purport to be, nor standing alone can I decide, that in effect it is an assignment for the benefit of creditors within the meaning of the statute.
The question whether Chapman, the grantee under the deeds, may lawfully sell the chattels assigned without a foreclosure, is not a question proper to be disposed of upon demurrer. It was not discussed upon' the argument, and I deem it improper, in this stage of the cause, to intimate any opinion in regard to it.
As the demurrer extends to both instruments, one of which is held valid, it must be overruled. The statute prescribes that where a demurrer is overruled the defendant shall pay costs. But as this demurrer is filed for a special object, viz. to test the validity of the agreements set out in the bill, and as it was specially agreed, by the state of the case, that the question of costs should be determined by the Chancellor, costs will not be allowed. Looking at the result, both parties being partially successful, that is in accordance with the usual practice in equity.